UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

-----------------------------------------------------x

MICHAEL HINTZ,                                  :
an individual,                                  :        CASE NO.:
                                                :
            Plaintiff,                          :        CIVIL DIVISION
                                                :
vs.                                             :        RELATED CASE: 18-cv-1935-SSV-JCM
                                                :
                                                :
BOARD OF COMMISSIONERS OF THE                   :
LOUISIANA STADIUM AND                           :
EXPOSITION DISTRICT, as the political           :
entity which owns the Superdome and             :
Smoothie King Center;                           :
KYLE FRANCE, in his official capacity as        :
chief executive of the BOARD OF                 :
COMMISSIONERS OF THE LOUISIANA                  :
STADUM AND EXPOSITION DISTRICT;                 :
and SMG,                                        :
                                                :
            Defendants                          :
-----------------------------------------------------x

## COMPLAINT

**BIZER & DEREUS, LLC**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Jennifer M. Coco (LA #34492)
jcoco@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

1

## INTRODUCTION

Plaintiff, MICHAEL HINTZ, by and through his undersigned counsel, hereby files this Complaint and sues the BOARD OF COMMISSIONERS OF THE LOUISIANA STADIUM AND EXPOSITION DISTRICT, as the political entity which owns the Mercedes-Benz Superdome and the Smoothie King Center (hereinafter referred to as "BOARD"), for damages, injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* (hereinafter "Americans with Disabilities Act" or "ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* (hereinafter "Rehabilitation Act"); sues SMG for declaratory and injunctive relief, attorneys' fees, and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and the Louisiana Commission on Human Rights, La. Rev. Stat. Ann. § 51:2231 *et seq.*, (hereafter "LCHR"); and sues KYLE FRANCE (hereinafter referred to as "FRANCE"), in his official capacity as chairperson and chief executive of the BOARD, for injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the ADA and the Rehabilitation Act. In support of this action, Plaintiff states as follows:

## JURISDICTION AND PARTIES

1.     This is an action for relief pursuant to Title II and Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter referred to as "Americans with Disabilities Act" or "ADA"), the Rehabilitation Act (, 29 U.S.C. §794, *et seq.* (hereinafter referred to as "Rehabilitation Act"), and the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 *et seq.*, (hereafter "LCHR").

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

3.     Plaintiff, MICHAEL HINTZ, (hereinafter referred to as "MR. HINTZ"), is a resident of

Hinds County, Mississippi.

4.  MR. HINTZ is a qualified individual with a disability under the ADA.  MR. HINTZ was diagnosed with Multiple Sclerosis in February, 2003.

5.  Due to his disability, MR. HINTZ is substantially limited in several major life activities and relies on a wheelchair for mobility. Specifically, MR. HINTZ is unable to walk, stand, or use his legs without assistance.

6.  Upon information and belief, the BOARD is the political entity which owns the real property, improvements, and programs which are the subject of this action, to wit: the Mercedes-Benz Superdome, located at 1500 Sugar Bowl Drive, New Orleans, LA 70112 (hereinafter "Superdome").

7.  Upon information and belief, the BOARD is the political entity which owns the real property, improvements, and programs which are the subject of this action, to wit: Smoothie King Center, 1501 Dave Dixon Dr, New Orleans, LA 70113 (hereinafter "Smoothie King Center").

8.  Upon information and belief, SMG manages and operates the CenturyLink Center, the Superdome, and the Smoothie King Center.

9.  Upon information and belief, KYLE FRANCE, named in his official capacity as the chairman of the BOARD, is the official with chief executive power with respect to the BOARD, and bears responsibility in his official capacity as chief executive for administering, operating, and maintaining the BOARD's public goods and services.

10.  Upon information and belief, SMG is a partnership issued charter number 34816755L by the Louisiana Secretary of State and doing business in Orleans Parish, Louisiana.

11.  Upon information and belief, SMG is domiciled at 300 Conshohocken State Road, Ste. 450, West Conshohocken, PA 19428, with a Louisiana principal place of business located in New Orleans, Louisiana.

12.  Upon information and belief, pursuant to an agreement between SMG and the BOARD, SMG operates the programs, services, accommodations which are offered at Superdome and the Smoothie King Center.

13.  All DEFENDANTS are obligated to comply with the ADA; the BOARD and FRANCE are obligated to comply with the Rehabilitation Act; SMG is obligated to comply with the LCHR.

14.  A substantial majority of the events giving rise to this lawsuit occurred in the Eastern District of Louisiana, Orleans Parish.

**FACTUAL STATEMENT**

15.  MR. HINTZ realleges and reavers Paragraphs 1-14 as if they were expressly restated herein.

16.  MR. HINTZ is a music fan. MR. HINTZ enjoys a wide variety of music and regularly visits music venues across the Southeast United States.

17.  As a result of his disability, MR. HINTZ regularly purchases wheelchair accessible tickets to live music events.

18.  MR. HINTZ has frequently encountered discrimination in the purchase of accessible tickets prior to attending music venues. Specifically, MR. HINTZ has been unable to

purchase accessible tickets in a manner equivalent to non-disabled persons because many venues will not permit the online sale and purchase of wheelchair accessible tickets – even though the ADA regulations expressly require that wheelchair accessible tickets be made available for sale in the same manner, method, time, and frequency as the sale of conventional tickets.

19.    This action concerns the discriminatory decision made by venue operator SMG to refuse to permit the sale of accessible tickets at three facilities: the CenturyLink Center, the Smoothie King Center, and the Mercedes-Benz Superdome.

20.    This also concerns the discriminatory decision made by the State of Louisiana, through the BOARD and KYLE FRANCE, to permit and/or encourage SMG's refusal to sell wheelchair accessible tickets through online methods.

*The Applicable ADA Regulations Require that Venues and their Operators Sell Tickets to Persons with Disabilities in a Manner Equivalent to Non-Disabled Persons.*

21.    The ADA prohibits discrimination by public accommodations, including Defendants, stating that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who … leases …or operates a place of public accommodation."  42 U.S.C. § 12182(a) ("General rule").

22.    Since 2011, ADA regulations have been in place to govern Defendants' ticket sales procedures for individuals with disabilities. Pursuant to regulation, Defendants are operating "a public accommodation that sells tickets for a single event or series of events"  and are required to "modify its policies, practices, or procedures to ensure that individuals with disabilities have an equal opportunity to purchase tickets for accessible

seating –

o   During the same hours; …
o   Through the same methods of distribution; [and]
o   In the same types and numbers of ticketing sales outlets, including … third-party ticketing services, as other patrons…"

28 C.F.R. §§ 36.302(f)(1)(ii)(A), (C), (D).

*Mr. Hintz Experienced Discrimination When He Tried to Purchase Accessible Tickets at the CenturyLink Center.*

23.   In early July of 2017, MR. HINTZ attempted to purchase tickets for wheelchair accessible seats on Ticketmaster's website (http://www.ticketmater.com) to Paul McCartney's July 15, 2017 show at the CenturyLink Center in Bossier City, Louisiana.

24.   Even though wheelchair accessible seats were available at the CenturyLink Center for the Paul McCartney show, the Ticketmaster website did not provide any ability for MR. HINTZ to reserve or purchase the wheelchair accessible seats.

25.   At the same time, conventional tickets were available on the Ticketmaster website for purchase by non-disabled persons.

26.   Due to the lack of an option to purchase accessible tickets through the internet, MR. HINTZ was forced to purchase his tickets to the Paul McCartney show via telephone.

27.   Because MR. HINTZ was forced to purchase his tickets over the telephone instead of online, MR. HINTZ was deprived of valuable features of online purchase, such as convenience, online security, and the immediate gratification of the purchase.

28.   Additionally, during the time a person with a disability has to sit on hold or wait for a response email, their desired seats could be purchased by someone else. In contrast, when purchasing seats online, a user can immediately add a desired seat to their electronic "shopping cart", thereby reserving the seats during the checkout process.

*Mr. Hintz Experienced Discrimination When He Tried to Purchase Accessible Tickets at the Superdome.*

29.    On information and belief, SMG exclusively contracts with Ticketmaster, a third-party ticket vendor, for ticket sales to its event. When one visits the Superdome website searching for ticket sales, the website links directly to the website of its third-party ticket vendor, Ticketmaster.

30.    On December 8, 2017, MR. HINTZ attempted to purchase wheelchair accessible seating on the Ticketmaster website for a Taylor Swift concert on September 22, 2018 at the Mercedes-Benz Superdome in New Orleans, Louisiana.

31.    The website provided no option to purchase such seating, even though wheelchair accessible seating exists at the Superdome.

32.    Due to the discriminatory nature of the seating sales platform at the Superdome, MR. HINTZ opted not to purchase tickets to the Taylor Swift concert.

*Live Nation Provided Mr. Hintz with Information Demonstrating that SMG is Responsible for its Policies/Practices at the Superdome and Smoothie King Center.*

33.    Given the repeated discrimination, Mr. Hintz and his counsel believed that this discrimination emanated from Live Nation Entertainment, Inc. ("Live Nation").

34.    Upon information and belief, Live Nation is the company that operates the websites Ticketmaster.com and livenation.com.

35.    Further, Live Nation provides interactive venue maps and ticket purchasing networks to venues across the United States.

36.    After several conversations with counsel for Live Nation, however, Live Nation provided definitive proof that some venues within the Live Nation network comply with the ticketing regulations contained at 28 C.F.R. §§ 36.302(f), while other venues do not.

37.   Upon information and belief, at the venues where individuals with disabilities are unable to purchase an accessible ticket online, or where some events at the venue are not in compliance with the ticketing regulations, Live Nation will display the following statement (or a similar iteration):

> *Ticketmaster, on behalf of its clients, strives to make it as easy as possible to purchase accessible seating tickets for venues across the country. Most venues offer accessible seating areas to accommodate their guests. Availability and type of accessible seating tickets will vary based on each venue's policies and/or the type of event taking place. Note: Venues are solely responsible for establishing their own accessible seating ticket policies. Some venues sell all or a portion of their accessible seating tickets only through their box office and not through Ticketmaster.*

*SMG Takes Steps to Comply with the ADA, but Fails to Bring itself into Compliance.*

38.   In a related matter in this District Court, Stephen Carrier filed suit against SMG on April 20, 2018. SMG was served with the Amended Complaint on April 23, 2018.

39.   On May 14, 2018, while preparing the instant Complaint, undersigned counsel identified that SMG had apparently changed the configuration as to how accessible tickets can be purchased at some, but not all shows at the Superdome. Specifically, when looking at certain events, the Ticketmaster website now says in regards to accessible tickets "They're on the map!"

40.   Undersigned counsel informed Mr. Hintz of his existing development. Based on their cursory initial review, undersigned counsel believed that SMG changed how accessible tickets are purchased at the Superdome for all shows.

41.   On May 15, 2018, undersigned counsel completed and sent a detailed letter to SMG on Mr. Hintz behalf in which counsel explained the issues, the applicable law, and asked that SMG engage in amicable discussions of a possible pre-suit resolution. Undersigned

8

counsel asked that SMG respond by Tuesday, May 29, 2018.

42. **SMG completely failed to respond to undersigned counsel's attempt to engage in amicable pre-suit resolution discussions. Plaintiff's attempt to engage in pre-suit resolution with SMG amounted to a futile gesture.**

43. On May 16, 2018, having learned that SMG had apparently changed their policies at the Superdome and the Smoothie King Center, Mr. Hintz logged on to both websites and attempt to purchase accessible tickets to the event known as Daryl Hall & John Oates and Train.

44. Instead of being able to purchase the accessible tickets on the map in the same manner as non-disabled persons, Mr. Hintz was presented with a form requiring him to submit his personal information and receive a call or email back from SMG. This "call back" procedure does not comport with the requirements of 28 C.F.R. §§ 36.302(f), which requires that Mr. Hintz be able to purchase accessible tickets under the same terms, conditions, and hours as non-disabled persons.

45. Upon further review by undersigned counsel, it is evident that SMG has only changed its ticketing distribution procedures and/or practices for certain events, but not all.

46. Through this process, Defendants do not permit the immediate online sale of ADA-accessible seats, but rather requires individuals, like MR. HINTZ, seeking accessible seating to fill out a form requesting such seats, for later consideration and eventual purchase via e-mail and/or telephone. On information and belief, such follow-up occurs during the set hours of the day that Defendant's customer service representatives are at work.

47.   A non-disabled individual wishing to purchase tickets to DEFENDANT'S event can readily purchase tickets online on Ticketmaster's website, without having to complete a form nor without additional emails and/or telephone calls with Ticketmaster's agents, and can do so at any hour of the day at their availability.

48.   MR. HINTZ plans to and will visit the Superdome and the Smoothie King Center in the future as a patron and also as a member of the disability community to determine whether the barriers to access alleged herein have been modified and/or brought into compliance with the requirements of the ADA.

49.   MR. HINTZ presently fears that he will encounter the ticketing-related barriers which Defendants have created on their websites in the future.

50.   The harm sustained by MR. HINTZ herein is the expected and foreseeable consequence of DEFENDATS' failure to comply with the requirements and mandates of federal civil rights laws. These statutes and accompanying regulations exist to ensure that individuals with disabilities who have communication limitations will have full use of all services, programs, and activities provided or made available by public entities. When DEFENDANTS failed to adhere to their obligations under these statutes and regulations, it was imminently foreseeable that individuals with disabilities would sustain the exact harms alleged by MR. HINTZ in this lawsuit.

51.   MR. HINTZ has reasonable grounds for believing that he is about to be subjected to discrimination and ADA violations which have been detailed in this Complaint.

### COUNT I - VIOLATION OF TITLE III OF THE
### AMERICANS WITH DISABILITIES ACT
### AS TO SMG

52.   MR. HINTZ realleges and reavers Paragraphs 1 - 51 as if they were expressly restated

herein.

53.   Upon information and belief, the SMG organizes, hosts, and operates various events at the Mercedes-Benz Superdome, 1500 Sugar Bowl Drive, New Orleans, Louisiana, 70112, via a lease or other operating agreement with the venue.

54.   Upon information and belief, the SMG organizes, hosts, and operates various events at the Smoothie King Center, 1501 Dave Dixon Dr, New Orleans, LA 70113 via a lease or other operating agreement with the venue.

55.   Upon information and belief, SMG meets the definition of the operator of a public accommodation, as a private entity that leases or otherwise operates a place of public accommodation, because they operate the Mercedes-Benz Superdome and the Smoothie King Center.

56.   The U.S. Supreme Court has ruled that "the phrase 'public accommodation' … 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled."  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676-677 (2001) (internal citations omitted).

57.   Within ADA jurisprudence, there is a "general principle that, under the statute, a place of public accommodation may be 'operated' by entities who do not own the facility and use it for a limited time period only."  *Disabled Rights Action Committee v. Las Vegas Events, Inc.,* 375 F.3d 861, 874 (9th Cir. 2004) (internal citations omitted).

58.   Since 2011, ADA regulations have been in place to govern SMG's ticket sales procedures for individuals with disabilities. Pursuant to regulation, SMG is "a public accommodation that sells tickets for a single event or series of events"  and is required to "modify its

policies, practices, or procedures to ensure that individuals with disabilities have an equal

opportunity to purchase tickets for accessible seating –

- o During the same hours; …
- o Through the same methods of distribution; [and]
- o In the same types and numbers of ticketing sales outlets, including … third-party ticketing services, as other patrons…"

28 C.F.R. §§ 36.302(f)(1)(ii)(A), (C), (D).

59.     The ADA prohibits discrimination by public accommodations, including SMG, stating

that "No individual shall be discriminated against on the basis of disability in the full and

equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation by any person who … leases

…or operates a place of public accommodation."  42 U.S.C. § 12182(a) ("General rule").

60.     The ADA further mandates that "An … entity shall not, … *through contractual or other*

*arrangements*, utilize … methods of administration … that have the effect of

discriminating on the basis of disability."  42 U.S.C. § 12182(b)(1)(D)(i) (emphasis

added).  This regulation "make[s] clear that private entities otherwise covered by Title III

may not avoid their obligations through contract."  *Disabled Rights Action Committee v.*

*Las Vegas Events, Inc.*, 375 F.3d 861, 873 (9th Cir. 2004).

61.     Relevant legislative history states a clear intent that these contractual prohibitions exist

"to prohibit a public accommodation from doing indirectly through a contractual

relationship, what it may not do directly. [A] covered entity may not use a contractual

provision to reduce any of its obligations under this Act."  H.R. Rep. No. 101-485(II), at

101, 104 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 384, 387.

62.     SMG contracts with a third-party ticket vendor, Ticketmaster, to sell tickets to its event

on the vendor's website.  On information and belief, Ticketmaster is the exclusive vendor for ticket sales to SMG's event.

63.   SMG's operates its online ticket sales such that individuals without disabilities can immediately purchase tickets online, but MR. HINTZ, an individual with a disability, cannot readily purchase a ticket for an accessible seat online and instead is required to complete a form to request a ticket, to be sold to him at a later date, and/or to purchase a ticket over the phone or by other means.

64.   SMG discriminated against MR. HINTZ by failing to ensure that MR. HINTZ had an equal opportunity to purchase tickets for accessible seating during the same hours and through the same methods of distribution as non-disabled individuals.

65.   MR. HINTZ was deterred from purchasing tickets to SMG's event due to the methods of administration maintained by SMG.

66.   The United States Department of Justice ("U.S. DOJ") issued Technical Assistance materials interpreting the Title III ticket sales regulations at 28 C.F.R. § 36.302 upon their promulgation in 2011. The Technical Assistance materials explain that the impetus for these regulations was a long history of unequal ticket sales procedures, in the exact manner of ticket sales currently maintained by SMG, by and through its contracted third party ticket vendor.  To wit,

> Over the past 20 years, some public and private venues, ticket sellers, and distributors have not provided the same opportunity to purchase tickets for wheelchair-accessible seats and non-accessible seats. The general public has been able to directly and immediately purchase tickets for non-accessible seats, whether through a venue's Internet site or its box office, or through a third-party Internet based vendor. However, these direct purchase options have simply been unavailable to many individuals with disabilities because transactions frequently could not be completed. ***Instead the purchaser was directed to send an e-mail or***

13

*to call a separate telephone number to request tickets and wait for a response.*[1]

67.    In December 2005, prior to the promulgation of the 2011 ADA regulations regarding ticket sales, the U.S. DOJ and Ticketmaster entered into a settlement agreement regarding Ticketmaster's methods of ticket sales to individuals with disabilities.   "Settlement Agreement between the United States and Ticketmaster L.L.C.," *available at* https://www.ada.gov/ticketmaster.htm.  The settlement agreement was the result of numerous complaints against Ticketmaster, dating back to 1998, that its methods of online ticket sales discriminated against individuals with disabilities pursuant to Title III of the ADA. *Id.* at ⁋ 19.

68.    The 2005 Settlement Agreement elaborates on Ticketmaster's then-method of ticket sales for accessible seats to individuals with disabilities.  Namely, "individuals seeking to purchase Accessible Seating tickets must communicate their request via e-mail, and wait a period of time to learn whether there are available seats in order to consummate the purchase."  *Id.* at ⁋ 23.

69.    Ticketmaster committed in the 2005 Settlement Agreement to "continue to explore ways that will enable individuals with disabilities to purchase tickets for Accessible Seats on-line in the same manner individuals purchase tickets for General Seating on-line."  *Id.* at ⁋ 36.

70.    On information and belief, SMG is using a substantially similar method of online ticket sales for accessible seating that Ticketmaster was impermissibly using thirteen years ago

---

[1] US Dept. of Justice, Civil Rights Division, Disability Rights Section, "Ticket Sales," ADA 2010 Revised Requirements, pp 1-2 (available at https://www.ada.gov/ticketing_2010.htm) (emphasis added).

in the Settlement Agreement with the U.S. DOJ.

71. On information and belief, SMG's method of online ticket sales for accessible seating has not substantially changed since the subsequent promulgation of the 2011 ADA regulations governing ticket sales to individuals with disabilities.

72. SMG is liable for any ADA violations related to its methods of ticket sales to individuals with disabilities.

73. Given SMG's continuous flouting of federal civil rights law, and given the lack of a date-certain when SMG will bring its methods of ticket distribution into compliance, MR. HINTZ needs an injunction ordering SMG to comply with the ADA.

74. MR. HINTZ is interested in purchasing tickets online to SMG's events in the future, but fears that he will encounter the same discriminatory methods of ticket sales which are the subject of this action.

75. MR. HINTZ's ongoing and future inability to purchase tickets online to SMG's event poses several harms.

76. First, there is limited ticket availability for accessible seating and MR. HINTZ desires to purchase tickets in the same "first-come, first-served" manner that non-disabled individuals enjoy when availing themselves of online ticket sales services.

77. Second, MR. HINTZ is unfairly burdened by the possibility of having to travel to a physical box office to purchase tickets to SMG's event due the unavailability of online ticket sales and possible extended call times waiting for a sales agent over the phone. Unnecessary travel to a physical box office poses the risk of waiting outside in the elements, including excessive summer temperatures or thunderstorms, in an attempt to

buy tickets to SMG's events.  Such a burden is not borne by non-disabled individuals, who can freely purchase tickets online at their leisure.

78.  MR. HINTZ plans to and will attempt to purchase tickets online to SMG's event in the future as a patron and also as an ADA tester to determine if the discriminatory methods of ticket sales alleged herein have been modified.

79.  MR. HINTZ desires to attend SMG's events in the future.

80.  MR. HINTZ presently fears that he will encounter the same methods of online ticket sales in the near future.

81.  MR. HINTZ continues to desire to purchase tickets online to SMG's event, but will continue to experience a barrier to online ticket sales until SMG changes its methods of online ticket sales.

82.  Upon information and belief, SMG's methods of online ticket sales are still in effect and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA, even though modification is readily achievable.

83.  Upon information and belief, modification in the methods of online ticket sales is readily achievable, reasonably feasible, could be easily accomplished, and would not place an undue burden on SMG.

84.  Upon information and belief, modification in the SMG's methods of online ticket sales would provide MR. HINTZ with an equal opportunity to participate in, or benefit from, the goods, services, and accommodations which are offered to the general public at the SMG's event.

85.  Upon information and belief, SMG has failed to adopt any changes to its methods of

online ticket sales which would provide MR. HINTZ with equal access to ticket sales to SMG's event.

86. Independent of his intent to return as an attendee to SMG's event, MR. HINTZ additionally intends to return as an ADA tester to determine whether SMG's methods of online ticket sales have been remedied such that he is able to buy tickets for accessible seats online without first completing any forms or being subjected to any follow-up phone calls or e-mail correspondence concerning his purchase of accessible seating.

87. MR. HINTZ has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from SMG pursuant to 42 U.S.C. § 12205.

88. In addition to an award of compensatory damages, MR. HINTZ seeks an award of nominal damages. It is MR. HINTZ's position that an award of nominal damages would confer significant civil rights to the public as a judgment in his favor against DEFENDANTS, regardless of the amount, would deter DEFENDANTS from discriminating against individuals with disabilities in the future.

## COUNT II: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AS TO THE BOARD AND FRANCE

89. MR. HINTZ adopts and re-alleges the allegations contained in paragraphs 1-88 as if fully stated herein.

90. MR. HINTZ continues to desire to visit the Property, but fears that he will experience serious difficulty again in light of the failures of SMG to make adequate and sufficient accommodations for MR. HINTZ as a wheelchair user. As the owner of the Property, the BOARD and FRANCE are vicariously liable for any discrimination which occurs at the Property under the ADA by SMG.

91.  The BOARD and FRANCE have failed to adopt and implement adequate and sufficient policies and procedures and are therefore vicariously liable for all policies and procedures which are used by SMG at the Superdome and Smoothie King Center that deny MR. HINTZ meaningful access to the goods, services, and programs which are offered at the Property.

92.  Upon information and belief, the BOARD and FRANCE control how SMG conducts itself in regards to the Property such that they are independently liable for ADA violations at the Property.

93.  The BOARD and FRANCE have discriminated against MR. HINTZ by denying him full access to the services, programs, and/or activities by failing to make their facilities readily accessible as required by 42 U.S.C. §12132 and its implementing regulations at 28 C.F.R. § 35.101 *et. seq*.

94.  Specifically, the actions set forth in paragraphs 1-84 show that SMG are effectively excluding wheelchair patrons from obtaining the same benefits available to ambulatory patrons, in violation of 28 CFR § 35.138.

95.  The BOARD and FRANCE have discriminated against MR. HINTZ and others similarly situated in violation of the ADA by excluding and/or denying MR. HINTZ the full and equal benefits of their services, programs, and/or activities by failing to, *inter alia*, make adequate and sufficient accommodations for mobility impaired individuals such as MR. HINTZ, as detailed above in paragraphs 1-84.

96.  Upon information and belief, the BOARD and FRANCE continue to discriminate against MR. HINTZ, and all those similarly situated, by failing to make reasonable modifications

in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals.

97.     Upon information and belief, MR. HINTZ, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and/or activities of the BOARD, and have otherwise been discriminated against and damaged by the BOARD and FRANCE because of the BOARD's and FRANCE'S discrimination, as set forth above. MR. HINTZ and all others similarly situated will continue to suffer such discrimination, injury, and damage without the immediate relief provided by the ADA as requested herein.

98.     42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

99.     MR. HINTZ has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs, and litigation expenses from the BOARD and FRANCE pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

100.    MR. HINTZ is without adequate remedy at law and is suffering irreparable harm.

101.   Pursuant to 42 U.S.C. § 12131, *et seq*., this Court is provided authority to grant MR.

HINTZ's injunctive relief including an order that the BOARD and FRANCE alter the

facilities at Property and alter their policies at the Property to make the programs and/or

activities offered there readily accessible to and useable by MR. HINTZ and all other

persons with disabilities as defined by the ADA; or by closing the Property until such

time as the BOARD and FRANCE cure their violations of the ADA.

### COUNT III: VIOLATION OF THE REHABILITATION ACT AS TO THE BOARD AND FRANCE

102.   MR. HINTZ adopts and re-alleges the allegations contained in paragraphs 1-101 as if

fully stated herein.

103.   MR. HINTZ brings this claim against BOARD and FRANCE, based upon the

Rehabilitation Act, 29 U.S.C. §794, *et seq*.

104.   The Rehabilitation Act provides that:

No otherwise qualified individual with handicaps in the United States, as

defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her

handicap, be excluded from the participation in, be denied the benefits of,

or be subjected to discrimination under any program or activity receiving

Federal financial assistance or under any program or activity conducted by

any Executive agency or by the United States Postal Service. 29 U.S.C. §

794(a).

105.   Upon information and belief, as set forth herein, the BOARD and FRANCE have

violated the Rehabilitation Act by intentionally excluding MR. HINTZ, solely by reason

of his disability, from the participation in, and denying him the benefits of, and have

otherwise subjected him to discrimination under, the BOARD'S and FRANCE'S programs and activities.

106.   Upon information and belief, a non-exclusive list of the BOARD's and FRANCE'S violations of the Rehabilitation Act and discriminatory conduct against MR. HINTZ are evidenced by:

A.   denying MR. HINTZ access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations and services offered at the Property;

B.   by otherwise limiting MR. HINTZ in his enjoyment of the rights, privileges, advantages and opportunities which are enjoyed by individuals without disabilities who receive aids, benefits and services offered by the BOARD AND FRANCE;

C.   failing to administer services, programs, and activities in the most integrated setting appropriate to the needs of MR. HINTZ; and

D.   failing to design and implement new policies, or make alterations to existing policies, which would permit individuals with disabilities to participate in the BOARD's and FRANCE'S activities and programs.

107.   Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at the Property which MR. HINTZ is more likely than not going to encounter upon his future visits there. MR. HINTZ brings this action:

A.   to redress injuries suffered as a result of the BOARD's and FRANCE'S discriminatory actions and inactions set forth herein;

21

B.      to reasonably avoid further and future injury as a result of the BOARD's and FRANCE'S ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Rehabilitation Act;

C.      to be made whole and ensure future compliance; and

D.      to reasonably avoid future ADA and Rehabilitation Act litigation involving the same Property and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

108.   Upon information and belief, the BOARD and FRANCE are the recipients of federal funds.

109.   Upon information and belief, as the recipients of federal funds, the BOARD and FRANCE are liable for damages to MR. HINTZ as a result of their acts and omissions constituting intentional discrimination.

110.   As set forth above, MR. HINTZ has been denied access to, and has been, and without the relief requested herein will continue to be denied the access to the goods, services, programs, facilities, activities and accommodations offered by the BOARD and FRANCE solely by reason of his disability, and has otherwise been discriminated against and damaged solely by reason of his disability as a result of the BOARD's and FRANCE'S Rehabilitation Act violations set forth above.

111.   MR. HINTZ has been obligated to retain undersigned counsel for the filing and prosecution of this action, and he is entitled to recover those attorneys' fees, costs and litigation expenses from the BOARD and FRANCE pursuant to 29 U.S.C. §794(b).

112.   Pursuant to 29 U.S.C. §794(a) this Court is provided authority to grant MR. HINTZ injunctive relief including an order to alter the subject premises, facilities, services, activities, programs, and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; closing all premises and facilities and discontinuing all non-complying services, activities, programs and accommodations until the requisite modifications are completed; and, granting MR. HINTZ compensatory damages for the BOARD's discriminatory actions.

### COUNT IV: VIOLATIONS OF THE LOUISIANA COMMISSION ON HUMAN RIGHTS AS TO SMG

113.   MR. HINTZ repeats and realleges all preceding paragraphs in support of this claim.

114.   At all times relevant to this action, the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 et. seq., (hereafter "LCHR") has been in full force and effect and has applied the conduct of all SMG.

115.   At all times relevant to this action, MR. HINTZ has experienced substantial limitations to several major life activities, including walking, standing, and bending; has suffered an anatomical loss affecting the musculoskeletal system; and has been an individual with a disability within the meaning of the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2232(3)(a).

116.   At all times relevant to this action, SMG has been operating places of public accommodation, resort, or amusement as defined by LA. REV. STAT. ANN. § 51:2232(9) by virtue of either supplying services to the general public, soliciting and accepting the patronage of the general public, or having been supported directly or indirectly by government funds.

117.  The LCHR prohibits discriminatory practices and provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the grounds of . . . disability." LA. REV. STAT. ANN. § 51:2247.

118.  The LCHR extends relief to "any person deeming himself injured by" discrimination in violation thereof. LA. REV. STAT. ANN. § 51:2264.

119.  SMG discriminated against MR. HINTZ, on the basis of disability, in violation of LA. REV. STAT. ANN. § 51:2247, by denying him the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered at the CenturyLink Center, the Superdome, and the Smoothie King Center.

120.  MR. HINTZ deems himself injured by the SMG's discrimination and brings suit under the LCHR to recover compensatory damages for the injuries and loss he sustained as a result of Defendants' discriminatory conduct and deliberate indifference as alleged herein above.

121.  MR. HINTZ also seeks nominal damages as a means to deter SMG from committing illegal discrimination in the future.

122.  MR. HINTZ is further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the LCHR. LA. REV. STAT. ANN. § 51:2264.


WHEREFORE, MR. HINTZ demands judgment against DEFENDANTS and requests

the following relief:

A. That this Court declare that the DEFENDANTS' methods of ticket sales are in violation of the ADA;

B. That this Court enter an Order directing DEFENDANTS to alter their methods of online ticket sales to make them accessible to and useable by individuals with disabilities to the full extent required by Title III of the ADA;

C. That this Court enter appropriate and reasonable injunctive relief against DEFENDANTS;

D. That this Court award compensatory and nominal damages pursuant to Title II of the ADA, the RA, and the LHRA;

E. That this Court award reasonable attorneys' fees, costs (including expert fees), and other expenses of suit, to MR. HINTZ, pursuant to 42 U.S.C. § 12205; and

F. That this Court award such other and further relief as it deems necessary, just, and proper.

                      Respectfully Submitted,

                      **BIZER & DEREUS**
                      Attorneys for Plaintiff
                      Andrew D. Bizer (LA # 30396)
                      andrew@bizerlaw.com
                      Garret S. DeReus (LA # 35105)
                      gdereus@bizerlaw.com
                      Jennifer M. Coco (LA #34492)
                      jcoco@bizerlaw.com
                      3319 St. Claude Ave.
                      New Orleans, LA 70117
                      T: 504-619-9999; F: 504-948-9996

                    By:/s/ Garret S. DeReus_____
                      Garret S. DeReus